## BASTIAN v. KEYSTONE GAS CO.

(Supreme Court, Appellate Division, Fourth Department. March 26. 1898.)

1. GAS EXPLOSION—PERSONAL INJURIES—NEGLIGENCE—EVIDENCE.

In January, 1898, plaintiff rented a house formerly heated by natural gas. Defendant's servant, on the premises being vacated in November, disconnected the gas main from the kitchen stove. Plaintiff, in January, applied to have the house supplied with gas, and defendant's servant, who had previously disconnected the main, made connections between it and the stove in the sitting room. The next day a wood stove was erected in the kitchen, and while plaintiff's wife was lighting it an explosion occurred. which seriously injured her, and wrecked the kitchen. *Held*, that a verdict that the accident was caused by the negligence of defendant's servant in leaving the main insecurely closed was sustained by the evidence.

2. SAME—LIABILITY FOR DAMAGES—CONSTRUCTION OF EXEMPTION CLAUSE.

A provision on the back of an application to furnish plaintiff with natural gas, exempting defendant from damages from an explosion occurring from the use of the gas, has no application where the explosion was caused by the imperfect closing of the gas main by defendant's servant when no gas was being used in the house at the time.

3. SAME—CONNECTION OF GAS PIPES—DUE CARE.

Where defendant insisted upon making all gas connections between house mains and pipes, and assumed that duty, it was bound to exercise due care in performing it.

4. SAME—DEFENDANT'S DUTY TO PREVENT—QUESTIONS FOR JURY.

In an action to recover for injuries caused by gas escaping from a pipe through defendant's negligence, where it was defendant's duty to exercise great care to prevent such escape, whether applying one's nose to the opening of the floor wherein the pipe was plugged, to ascertain whether gas was

escaping, was a performance of that duty where there were other well-known tests, is a question for the jury.

5. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

A motion for a new trial on the ground of newly-discovered evidence will be denied where it is at most cumulative, and by due diligence could have been obtained at the former trial.

Appeal from trial term.

Action by Jacob Bastian against the Keystone Gas Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed. ·

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John G. Milburn, for appellant.

J. H. Waring, for respondent.

FOLLETT, J. This action was begun March 6, 1893, to recover damages for the loss of service of the plaintiff's wife, the expenses of her cure, occasioned by personal injuries sustained by her, and also for the loss of goods, caused, it is alleged, by the negligence of the defendant. The plaintiff recovered a verdict for $2,650 damages. The defendant is a domestic corporation engaged in supplying natural gas for lighting and heating buildings in the city of Olean. Augustus T. Eaton is the owner of No. 11 Buffalo street, a dwelling house, about 23 feet wide and 27 feet deep, with an addition in the rear 14 feet square, called a "lean-to," and used as a kitchen. There is a cellar under the main part of the house, but none under the kitchen, which is not underpinned, and the floor of which is some inches above the ground. Boards extend from the sills of the kitchen to the ground. The house was built in 1888 or 1889 by the present owner, and was plumbed for natural gas for lighting and heating. For about five years before November 11, 1892, it was occupied by Andrew Peterson, a tenant of the owner. During his occupancy natural gas was used for heating the house, including the stove in the kitchen. It was supplied through a pipe from the street, entering through the front cellar wall, and was carried a few inches underneath the floors, and extended through the rear wall of the upright part and under the kitchen. From the end of this pipe under the kitchen a piece of pipe extended upward at right angles with the main pipe through the kitchen floor, and was annexed to the kitchen stove. When Peterson vacated the house,—November 11, 1892,—an employé of the defendant (Thomas Doyle) shut off the gas at the street, and disconnected the stoves. Mr. Peterson claimed to own the perpendicular pipe extending from the main to the kitchen stove, which was removed by Doyle, and taken away by Peterson. Thomas Doyle, the defendant's gas fitter, testified that he screwed this pipe out of the main, which was about eight inches below the kitchen floor, and suspended by a wire. He testified that there was a loose board in the kitchen floor, which he readily removed, and, after the perpendicular pipe had been taken away, he plugged the opening in the main by screwing in an iron plug. In January, 1893, the plaintiff rented the house, and January 24, 1893, he signed a written application to the defendant to have the house supplied with gas for the purpose

of lighting and heating it.    Doyle was still a gas fitter employed by the defendant, and was sent by it on that day to make connections between the pipe and the stove in the sitting room.    The plaintiff at that time stated that he knew nothing about the use of gas for heating purposes, and that he would not have the kitchen stove connected until his wife should come.    The gas on that day was connected with a stove for heating the sitting room, but with no other.    The gas was turned on and lighted in the sitting-room stove.    The plaintiff's family arrived at the house January 24th about 9 o'clock in the evening, which they occupied during the night.    No kitchen stove was then in place.    On the next day the plaintiff's goods were unpacked, and distributed through the house.    About 2 o'clock in the afternoon of that day a wood-burning kitchen stove was set in the kitchen, and connected with the chimney, and a fire lighted in it.    The use of the fire was discontinued about 3 o'clock in the afternoon.    The kitchen had an outside door, which was open most of the time during the day.    About 7 o'clock on the morning of January 26th the plaintiff's wife entered the kitchen, and lighted a match for the purpose of starting a wood fire in the kitchen stove, and as soon as it was lighted an explosion occurred, severely injuring the plaintiff's wife, wrecking the kitchen, and damaging the plaintiff's goods.

The plaintiff tried this case upon the theory that the explosion was caused by the defendant's gas fitter negligently leaving open the main which supplied the kitchen stove when he disconnected Peterson's stove, November 11, 1892, and negligently failing to discover, January 24, 1893, when he connected the plaintiff's sitting-room stove with the main, that it was open.    The defendant advanced no theory explanatory of the cause of the explosion, except it was suggested that some one, on the 24th or 25th of January, 1893, opened the main extending under the kitchen floor, which theory, if such it can be called, is a highly improbable one, and not supported by the evidence.    No one had any interest in removing the plug which Doyle testified he placed in the main November 11, 1892.    The plaintiff's kitchen stove was not fitted for gas, and he could not use it with gas until it should be.    It is highly improbable that the plaintiff, who had lived, as the evidence shows, in cities and villages where illuminating gas was generally used, was not familiar with the danger incident to gas flowing into a room, and that he would leave open a gas main underneath his house.    The jury, under a charge eminently fair, full, and clear, found that the defendant's employé left this main open, or insecurely closed, November 11, 1892, when he disconnected Peterson's stove, or that he opened the main January 24, 1893, for some purpose, and left it unclosed, or insecurely closed.    The verdict that the accident was caused by the negligence of Doyle, the defendant's employé, is amply sustained by the evidence.    It is conceded that the defendant, by its rules, insisted that all connections between house mains and stoves should be made by it, and that the disconnection of November 11, 1892, and the connection of January 24, 1893, were made under the direction of the defendant's superintendent, who sent defendant's gas fitter, Doyle, to do the work.    Either act being negligently done, and that negligence causing the accident, the defendant was liable for the conse-

quences, unless, as it is claimed, it was protected by the second provi-
sion indorsed on the back of the application signed by the plaintiff, of
which the following is a copy:

"(1) The company shall use all reasonable care and diligence to furnish a
sufficient supply of gas, but, if the supply of gas should fail either partially or
totally, either from failure of wells or bursting of pipes, or if prevented by legal
proceedings, or for any cause beyond the control of the company, then the com-
pany is not to be held liable for any damages or loss resulting therefrom.
*Neither is it to be held liable for damages to person or property resulting from
explosion or fire, or for any other damages whatsoever arising or occurring
from the use of the gas.*"

It is contended that the last clause of this provision printed in italics
exempts the defendant from liability for this explosion. This clause
should be construed strictly against the party whose words they are.
The conditions are referred to on the face of the application signed
by the plaintiff, but there is no evidence that his attention was called
to the conditions when he signed the application. The just construc-
tion of this clause is that the defendant is not to be held liable for
damages for accidents occurring from the use of gas; that the words
"use of gas" limit and control all the preceding words of the clause.
The explosion was not caused by the use of gas in its ordinary sense.
When the explosion occurred, no gas was burning in the dwelling;
the gas connected with the sitting-room stove was not lighted. The
accident was occasioned, not by the plaintiff's use of gas in the dwell-
ing, but by the nonclosing or imperfect closing of the main under the
kitchen. The jury having found that the explosion was caused by the
negligence of the defendant's employé in leaving open or in imper-
fectly closing the main, the defendant cannot escape liability under
this clause. The defendant expressly insisted on its right to make
all connections between house mains and stoves, and, having assumed
this duty, it was bound to exercise due care in making these connec-
tions, and in seeing that openings in the house mains were so tightly
closed as to prevent the escape of gas into dwellings; and for its neg-
ligent failure to perform this self-imposed duty it is liable.

The court did not err in refusing to instruct the jury that, in case
Doyle plugged the kitchen main November 11, 1892, and, after turning
on the gas January 24, 1893, applied his nose to the hole in the
kitchen floor to ascertain whether gas was escaping, the defendant had
performed its duty to the plaintiff. It was the duty of the defendant
to exercise great care to prevent the escape of gas from the pipes
within its control into the dwelling. It appears that there were other
well-known tests usually applied, which were not made. Whether
what Doyle testified that he did was all he should have done was a
question for the jury. Even if Doyle plugged the pipe November 11,
1892, but so imperfectly that when gas was turned on to the house
through the street connection it escaped into the kitchen by reason
of imperfect plugging, the jury was authorized to find that the defend-
ant was negligent. Whether cement or paint was applied to the plug,
so as to make a tight connection, does not appear.

The defendant moved for a new trial on the ground of newly-discov-
ered evidence, which motion was denied, and from that order it ap-
peals. The newly-discovered witness is William Whelply, who states-

in his affidavit that he has been a resident of Olean for 17 years, and for some years one of the constables of the city; that in December, 1892, and January, 1893, he was well acquainted with No. 11 Buffalo street; that he noticed that the house was vacant, and his attention was called to the fact that boys were entering it, and were throwing stones and breaking windows of vacant premises near the house. He states that Mr. Eaton, the owner of No. 11, talked with him about looking after the boys, and requested that he get their names, and report them. Eaton, in his affidavit, states that he has no recollection of having any such conversation with Whelply, and that the house was securely closed and locked. Whelply states that just before dark on the evening before the explosion he saw boys at the back of the house; that he went there, and the boys went away; that he saw the kitchen door open, and entered the kitchen, and saw boxes of goods standing about the room; that he saw a board 12 or 14 inches in length, which formed part of the floor, had been taken up; that he looked into this hole for the purpose of seeing what there was there, and he saw the end of a gas pipe a few inches below the floor, which was plugged with an iron plug screwed into the main. This he saw distinctly. This was just before dark. Other witnesses testified on the trial that it was dark underneath the kitchen floor. Whelply does not testify that he saw or heard any person about the house. At this time the plaintiff was in the house, but did not see or hear Whelply. Other witnesses who were at the house testify that they neither saw nor heard Whelply. The next morning Whelply heard of the explosion, and he went to the house, but his interest in the premises was not sufficient to cause him to make any investigation, and he paid no attention to the matter. He states in his affidavit that he knew actions were pending against the defendant for damages caused by the explosion, but he never disclosed the fact within his knowledge until after the trial, because he did not know it was important, and did not wish to be troubled as a witness. It appears by his own affidavit that he subpœnaed the witnesses in this case, so that his attention was called to the fact that the action was to be tried, and yet he remained silent during all the period that the different theories as to the cause of the explosion were being discussed, and disclosed his knowledge to the defendant's general manager at some time during the month following the trial. If Whelply's statement is correct that on the evening of the day before the explosion that plug was in place, it destroys the defendant's theory that the plug had been removed by some person other than its gas fitter after January 24, 1893, and tends to prove that the plug must have been so insecurely fitted as to permit the escape of gas into the house, for it is not probable that the plaintiff, during the night of January 25th and 26th, interfered with the plug. There was no motive for his doing it. The evidence of Whelply is at most cumulative, and the defendant was not diligent in not finding it out before the trial.

The judgment and order denying a motion for a new trial on the minutes should be affirmed, with costs, and order denying the motion for a new trial on the ground of newly-discovered evidence should be affirmed, with $10 costs and printing disbursements. All concur.